UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KENYA ABDULE MARTIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 2:19-CV-166-M-BR |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| | § | |
| Respondent. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE MAGISTRATE JUDGE

Kenya Abdule Martin, a Texas prisoner, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Martin challenges his 2015 Potter County conviction for capital murder and life sentence. For the reasons set forth below, Martin is not entitled to federal habeas corpus relief or a Certificate of Appealability from this court.

## I. BACKGROUND

### A. Indictment

In December 2014, a Potter County grand jury indicted Martin on a charge of capital murder, to wit, fatally shooting Edward Pendleton on or about May 1, 2013, while in the course of committing or attempting to commit the robbery of Pendleton.

### B. Trial

Martin's jury trial commenced on February 17, 2015. Danielle Luce testified that: (1) Edward Pendleton was the father of her two children and a drug dealer known on the streets as "ATX"; (2) on the morning of May 1, 2013, she and Pendleton were awakened by loud noises in their house at 823 Kentucky; (3) Pendleton ran into their living room and shortly thereafter she

heard two gunshots; (4) when she looked, she saw two men standing over Pendleton's body, one of whom shot Pendleton again; (5) the man who shot Pendleton was black, taller than 5'8" and dressed in a dark hoodie and dark pants; (6) the two men forced their way into her bedroom and demanded money; (7) when she pointed to her purse in a basinet and a pair of pants on the floor, they hit her with a gun; (8) after the two men left, she went to Pendleton, who was able to talk and kept saying what she initially thought was "Morris" but later realized was "Damarrus"; (9) she called 911 and later went to the police station; and (10) she was unable to identify either of the two men who broke into her home that morning.  S.F. Trial, Vol. 2/6, at 211-23, 231-46 [ECF no. 50-26].

Andrea Brown testified in pertinent part that: (1) she drove Martin (whom she identified as going by the moniker "K"), Stevon Polk, and Polk's friend "Morris" to the neighborhood where Luce and Pendleton's home was located, i.e., near the intersection of Kentucky and Line Streets; (2) the three men exited her vehicle and were gone for a few minutes; (3) when the three men returned, "Morris" had a bag in his hand (which was later identified as Luce's purse) and Martin had a gun in his hand; (4) the three men looked tense; (5) more specifically, Polk looked like he was in shock, "Morris" appeared scared, and Martin appeared angry; (6) Martin said "I clapped that nigger," and "Morris" replied "I can't believe you did that"; (7) her boyfriend Marquis Wilkins was home when they returned to Brown's apartment; (8) the three men told Wilkins what happened, during which discussion Martin explained that he thought the man had a gun, said that he shot the man again after he fell to the floor, and he was pretty certain the man was dead; (8) Martin also said that he pointed his gun at the woman and told her to stop screaming; (9) prior to leaving her apartment that day, Brown witnessed Martin loading his gun; (10) Brown admitted that her first statement to police was only partially accurate and explained that she returned to the

police on May 7 to give a full and complete statement; and (11) she had been charged with aggravated robbery in connection with the crime in question and had received a five-year sentence as part of a plea bargain in exchange for her truthful testimony against Martin.  S.F. Trial, Vol. 3/6, 151-217 [ECF no. 50-27].

Two witnesses who were at the apartment of Andrea Brown and Marquis Wilkins in the hours immediately after Pendleton's murder testified that they heard Martin admit he had killed someone.[1]

A forensic pathologist testified that Pendleton died as a result of multiple gunshot wounds.[2]

The jury also heard extensive testimony from a variety of law enforcement officers who either collected evidence at the crime scene, collected or identified the murder weapon, or collected

---

[1] Korntee Fennell testified that she heard Stevon Polk, who looked terrified, say that Martin had shot their victim and that Martin admitted he had killed someone.  Testimony of Korntee Fennell, S.F. Trial, Vol. 3/6, at 240-68 [ECF no. 50-27].  Marquis Wilkins testified that: (1) on the morning of Pendleton's murder, Andrea Brown left their apartment with Stevon Polk and Martin (whom Polk had brought to their apartment the day before); (2) when they returned later that morning, Polk appeared scared and kept repeating that they had "burned a nigger"; (3) Martin in contrast appeared emotionless; (4) Martin explained in an emotionless tone that Polk kicked in the door and, when ATX came running out Martin shot him twice, then shot him two more times; (5) when Polk asked where the money was, Brown went through a purse with Polk and Martin; (6) the morning of the murder, Polk was wearing Wilkins' white Adidas tennis shoes; (7) Damarrus Ary looked panicked and remained silent when others discussed the murder; and (8) he had seen a box of bullets inside the bedroom used by Zyrus Williams in their apartment.  Testimony of Marquis Wilkins, S.F. Trial, Vol. 4/6, at 13-52 [ECF no. 50-28].

[2] More specifically, forensic pathologist Thomas Parsons testified in pertinent part that: (1) Martin sustained three gunshot wounds "GSW's"); (2) GSW one punctured the second rib anteriorly and both the upper and lower lobes of the right lung before penetrating the posterior seventh rib and exiting in the right mid back; (3) this wound would necessarily have made it difficult to breathe, was associated with hemorrhage in soft tissue, and resulted in the collection of 500 cc's of blood from the chest cavity; (4) no bullet was recovered in association with GSW one during autopsy; (5) GSW one could have been fatal by itself due to the extensive damage to the lung, plus associated bleeding; (6) GSW two penetrated the deltoid area of the upper right arm and caught the shoulder and scapula from behind; (7) GSW two exited Pendleton's chest above the entrance wound to GSW one just below the clavicle; (8) GSW two chipped and broke bones and caused soft tissue hemorrhage; (9) no bullet associated with GSW two was recovered during autopsy; (10) no stripling or soot was observed with the entrance wounds to GSW's one and two - neither of which was a contact wound; (11) GSW three entered Pendleton's body in the left buttocks and ended in the soft tissue on the right side of his chest; (12) GSW three traveled left to right in an upward direction through the body moving back to front and through the organs of the pelvic region, fracturing the sacrum and the sacroiliac joint, penetrating the end of the small intestine and ilium, passing through the liver, and through a rib; (13) GSW three would also have likely been fatal by itself given the extent of damage it caused; (14) the bullet associated with GSW three was recovered during autopsy; (15) 850 cc's of blood was recovered from the abdominal cavity; (16) there was no evidence of stripling at the entrance wound for GSW three; and (17) there was no evidence of disease in Pendleton's body.  Testimony of Thomas Parson, S.F. Trial Vol. 3/6, at 49-78 [ECF no. 50-27].

evidence from Brown and Wilkins' apartment.[3]

A pair of law enforcement officers identified a recording of a telephone conversation

between Martin and someone Martin identified as his sister recorded while Martin was an inmate

---

[3] Three Amarillo police officers who responded to an emergency call on the morning of the murder, testified that Pendleton was having difficulty breathing when they arrived at the crime scene, there was obvious damage to the front door of the residence, and Luce was very emotional. Testimony of Kris Koval, S.F. Trial, Vol. 2/6, at 251-61 [ECF no. 50-26]; Testimony of Seth Moore, S.F. Trial, Vol. 2/6, at 262-74 [ECF no. 50-26]; Testimony of Adam Trent Marcum, S.F. Trial, Vol. 3/6, at 13-34 [ECF no. 50-27].

A retired Amarillo Police Officer testified that she photographed Pendleton's body during his autopsy and described the injuries recorded in the photographs she had taken. Testimony of Modeina Holmes, S.F. Trial, Vol. 3/6, at 36-46 [ECF no. 50-27].

An Amarillo Police Officer who photographed the crime scene at 823 Kentucky identified a wide variety of photographs he took showing the broken front door frame, a shoe print on the front door where it had apparently been kicked open, as well as spent cartridge casings found on the front porch and inside the residence and blood stains and bullet holes observed inside the residence. Testimony of Joe Brown, S.F. Trial, Vol. 3/6, at 79-132 [ECF no. 50-27].

An Amarillo Police Officer testified that he assisted in maintaining surveillance and later assisted in executing a search warrant on an apartment at 120 N. Monroe in Amarillo on May 1, 2015. Testimony of Kyle Hawley, S.F. Trial, Vol. 3/6, at 218-28 [ECF no. 40-27]. Another Amarillo Police Officer testified that he assisted in maintaining surveillance on the apartment in question and assisted in arresting several persons who left the apartment in a vehicle following a traffic stop. Testimony of Toby Hudson, S.F. Trial, Vol. 3/8, at 229-34 [ECF no. 50-27]. An Amarillo Police Officer who transported Martin to jail following his arrest, testified Martin was uncooperative and that it took several officers to restrain Martin, who ultimately was outfitted with a red helmet and ankle restraints to keep him from hurting himself. Testimony of Thomas Newton, S.F. Trial, Vol. 3/6, at 235-39 [ECF no. 50-27].

An Amarillo Police Officer who assisted in the search of the apartment of Andrea Brown and Marquis Wilkins on May 1, 2015 testified regarding the discovery of a black purse later identified as belonging to Danielle Luce and a pair of white Adidas tennis shoes later identified as having a similar tread pattern to the shoe print on the front door of the residence at 823 Kentucky, as well as the discovery of ammunition identified as the same type found in the murder weapon and a handgun found under a seat inside Andrea Brown's vehicle following a stop in which Martin was a passenger in that vehicle. Testimony of Edward Thomas Carroll, S.F. Trial, Vol. 4/6, at 53-102 [ECF no. 50-28].

An Amarillo Police Officer who photographed and helped pull latent fingerprints from both the crime scene at 823 Kentucky and the apartment of Andrea Brown and Marquis Wilkins testified regarding cartridge casings found at 823 Kentucky, the shoe print on the front door of that residence, the clothing recovered during Pendleton's autopsy, which included bullet holes and blood stains, and the presence of Martin's fingerprints and palm print recovered from a box of ammunition found inside the Brown/Wilkins' apartment, the barrel of the murder weapon, and inside Brown's vehicle. Testimony of Jimmy Riffenberg, S.F. Trial, Vol. 4/6, at 104-66 [ECF no. 50-28].

A DNA expert testified that while Pendleton could not be excluded as a possible source of a blood stain on the white Adidas tennis shoe, Martin was not a source of any DNA found on any item at the crime scene or any other item submitted for analysis. Testimony of Naomi McDonald, S.F. Trial, Vol. 4/6, at 168-88 [ECF no. 50-28].

A trace evidence expert testified that the tread pattern on the bottom of the white Adidas tennis shoes recovered from the Brown/Wilkins apartment was similar to the tread pattern found on the front door of the residence at 823 Kentucky. Testimony of Lindsey Bynum, S.F. Trial, Vol, 4/6, at 189-96 [ECF no. 50-28].

at the Potter County Jail during which Martin described Pendleton's murder and identified Stevon Polk and Demarrus Ary as the other two persons involved in the robbery/murder.[4]

A firearm and toolmark expert testified that three shell casings and three bullets were recovered during the investigation of Pendleton's murder – one bullet at autopsy and two bullets from the crime scene at 823 Kentucky – and that while one of those bullets had insufficient characteristics for comparison, two of the bullets in question and all three of the shell casings found at the crime scene had been fired by the handgun recovered during the search of Andrea Brown's vehicle.[5]

On February 20, 2015, the jury found Martin guilty of capital murder as charged in the indictment against him.[6]

## C.  Direct Appeal

Martin appealed his conviction.[7]  The Amarillo Court of Appeals affirmed Martin's conviction in an unpublished opinion.  *Martin v. State*, no. 07-15-00079-CR, 2017 WL 1090613 (Tex. App. – Amarillo Mar. 15, 2017).[8]  The Texas Court of Criminal Appeals refused Martin's

---

[4] Testimony of Kenneth Daugherty, S.F. Trial, Vol. 4/6, at 203-08 [ECF no. 50-28]; testimony of Michael Clay Roland, S.F. Trial, Vol. 4/6, at 209-13 0ECF no. 50-28].  The tape recording was played in open court for the jury.

[5] Testimony of Joseph Mata, S.F. Trial, Vol. 4/6, at 214025 [ECF no. 50-28].

[6] S.F. Trial, Volume 5/8, at 82-86 [ECF no. 50-29].

[7] Attorney John Bennett filed Martin's appellant's brief on September 29, 2016, asserting four points if error, to wit, arguments that: (1) the trial court erred in failing to give an accomplice witness jury instruction regarding the testimony of Marquis Wilkins; (2) the jury instructions erroneously failed to to require the jury to determine whether Wilkins was an accomplice witness; (3) the jury instructions erroneously failed to require the jury to determine whether Korntee Fennell was an accomplice witness; and (4) the jury instructions erroneously defined "accomplice."  A copy of Martin's appellant's brief appears at ECF no. 50-3.

[8] A copy of the Amarillo Court of Appeals' opinion affirming Martin's conviction appears at ECF no. 50-5. That court found in pertinent part (1) there was no evidence in the record from trial establishing that Wilkins or Fennel were accomplice witnesses within the meaning of applicable Texas law, and (2) any error in the trial court's definition of accomplice witness in the jury charge was either harmless error or not egregious error.

petition for discretionary review on August 23, 2017.

### D. State Habeas Proceeding

Martin filed his pro se application for state habeas corpus relief on January 16, 2018, asserting ten grounds for relief.[9]  The state trial court held an evidentiary hearing on June 25, 2018 on Martin's *Batson* claim during which Martin's lead prosecutor, Audrey Mink, testified regarding her reasons for striking three members of the jury venire.[10]  In findings and conclusions issued

---

[9] Copies of Martin's state habeas corpus application appear among the pleadings and state court records in this case at ECF nos. 41 and 50-13.  As grounds for relief, Martin argued that: (1) his trial counsel rendered ineffective assistance by failing to: (a) consult adequately with Martin at the jail; (b) hire a private investigator and forensic expert to testify about gunshot residue; (c) obtain an affidavit from Fabian McGee; (d) investigate the character of prosecution witness Andrea Brown; and (e) object to evidence found in the vehicle of Andrea Brown; (2) his trial counsel rendered ineffective assistance by failing to: (a) request an accomplice witness instruction regarding prosecution witness Wilkins; (b) object to the erroneous definition of accomplice witness in the jury charge; and (c) request a jury determination regarding whether Wilkins was an accomplice witness; (3) his trial counsel rendered ineffective assistance by failing to (a) object that juror Joann Zuniga worked for the District Attorney's office, challenge Zuniga for cause based on bias, or otherwise strike venire member Zuniga, and (b) inquire into Zuniga's bias; (4) his trial counsel rendered ineffective assistance by failing to (a) subpoena Fabian McGee, and (b) object to phone calls played in open court; (5) his trial counsel rendered ineffective assistance by failing to request a mistrial based on prosecutorial misconduct after the trial court sustained an objection to the prosecution's jury argument suggesting defense counsel had fabricated unspecified evidence; (6) the prosecution violated the rule in *Batson* by striking all Black venire members; (7) his state appellate counsel rendered ineffective assistance by: (a) failing to raise abuse of discretion to the prosecution's use of the phrase "dead bang winner"; (b) failing to raise a point of error regarding defense counsel's objection to juror Amber Lynn Hobbs working with an aunt of the victim; and (c) waiving two points of error during oral argument; (8) the prosecution engaged in misconduct by: (a) relying on the perjured testimony of Marcus Wilkins when there was a reasonable probability Wilkins' testimony was induced by promises from the State and Wilkins' shoe print matched the pattern on the door of the crime scene; (b) the prosecution relied on the perjured testimony of Toby Hudson that Brown's vehicle was stopped pursuant to a traffic stop; and (c) the prosecution violated *Brady* by withholding evidence of gunshot residue on clothing; (9) police engaged in misconduct by using the perjured testimony of Toby Hudson regarding a traffic stop for which no citation was issued; and (10) the trial court lacked jurisdiction over Martin because the State of Texas is a corporate fiction and Martin is not a true natural living person.

In response to an Order from the state trial court, Martin's trial counsel attorney Steven Denny, filed an affidavit dated June 25, 2018 responding to Martin's conclusory assertions of ineffective assistance.  Likewise, Martin's state appellate counsel, attorney John Bennett, filed an affidavit dated June 22, 2018 with the state trial court addressing Martin's complaints of ineffective assistance on appeal.  Both Denny's affidavit and Bennett's affidavit can be found at ECF no. 41.

[10] Attorney Mink's testimony during Martin's state habeas evidentiary hearing appears at ECF no. 50-18, at pp. 54-74/88.  Attorney Mink testified without contradiction that: (1) she struck venire member Taylor because Taylor had been a litigant in a civil case in which Mink's then-spouse was counsel for the party opposing Taylor and her then-spouse had informed Mink that Taylor had been difficult (unreasonable) to negotiate with during settlement discussions; (2) she also struck Taylor because she feared Taylor might make a connection between Mink and Mink's then-spouse and hold that against Mink during Martin's trial; (3) she struck venire member Riles because this person appeared (based on rambling answers given during voir dire examination) to have religious scruples and philosophical issues with reaching a verdict in a criminal case and Mink did not believe this venire member was a suitable juror in a criminal case – so much so Mink initially challenged venire member Riles for cause but later withdrew her challenge

July 26, 2018, the state trial court recommended denial of Martin's state habeas corpus application.[11]  The Texas Court of Criminal of Appeals denied Martin's state habeas corpus application without written order on September 12, 2018.

### E.  Proceedings in this Court

Martin filed his original petition in the Eastern District of Texas on July 22, 2019 (ECF no. 1).  After transfer to the Amarillo Division of this Court, Martin filed his amended petition on September 18, 2019 (ECF no. 26), asserting ten grounds for relief, including a freestanding claim of actual innocence, multiple complaints of ineffective assistance by his trial counsel, a conclusory

---

for cause and instead struck Riles because she feared Riles would be unable to reach a verdict in a criminal case; (4) she also struck venire member Riles and venire member Weatherly because they both refused to choose an answer to one question on their juror questionnaire; and (5) she did not strike any venire member based on race, in part, because the prosecution planned to rely upon a number of witnesses at trial who were black. S.F. Testimony of Audrey Mink, S.F. State Habeas Hearing, at 23-43.

[11] Multiple copies of the state trial court's findings and conclusions appear in the record before this Court at ECF nos. 41 (at pp. 58-66 of 106) and 50-18 (at pp. 78-86 of 88).  As explained below, a substantial number of Martin's grounds for state habeas corpus relief were not addressed in any manner by the state habeas trial court's findings and conclusions.  For the reasons discussed at length below, however, it is unnecessary to determine the exact scope of the state habeas trial court's factual findings and legal conclusions regarding Martin's subject matter jurisdiction, *Giglio.Napue*, *Brady*, and *Batson* claims.  This is because it is apparent that the Texas Court of Criminal Appeals denied relief on all of Martin's state habeas claims on the merits.

Among the state trial court's factual findings and legal conclusions now before this Court (which address almost exclusively Martin's ineffective assistance claims) were determinations that: (1) Martin's trial counsel attorney Denny (a) appropriately investigated the case against Martin and potential witnesses and reviewed the State's evidence; (b) determined after investigation that Fabian McGee would not offer favorable testimony; (c) met with Martin multiple times prior to trial but not at the jail; (d) fully prepared for and actively participated in all phases of trial; and (e) did not have a proper basis for objecting to the stop of Brown's vehicle or to the admission of evidence obtained during the search of that vehicle; (2) no harmful error occurred regarding the trial court's definition of accomplice witness in the jury charge; (3) no evidence appeared in the record regarding juror Zuniga's relationship to the office of the District Attorney nor to any bias Zuniga might have had; (4) attorney Denny objected to the admission of tape recordings of calls to and from the jail and successfully obtained exclusion of one such call; (5) attorney Denny successfully objected to improper prosecutorial closing argument and obtained a jury instruction directing the jury to disregard same; (6) the prosecution used three of its peremptory strikes to remove black members of the jury venire; (7) attorney Denny did not urge a *Batson* objection because he did not perceive a need to do so and was not ineffective in failing to raise such an objection; (8) the prosecution's proffered race-neutral reasons for striking black venire members given during the state habeas hearing several years after Martin's trial established that race was not a factor in the State's use of its peremptory challenges; (9) the defense agreed to have juror Hobbs replaced with an alternate juror; (10) attorney Denny did not render deficient performance; (11) attorney Bennett's decision to waive two points of error at oral argument was made after legal research and was not negligent or ineffective; and (12) Martin failed to establish that he suffered prejudice as a result of the performance of his trial and state appellate counsel.

*Batson* claim, complaints of ineffective assistance by his state appellate counsel, multiple claims of prosecutorial and police misconduct, and an assertion the state trial court lacked subject matter jurisdiction over the criminal proceeding against Martin.

Respondent filed his answer on February 28, 2020 (ECF no. 40), arguing in part that Martin had failed to allege specific facts in support of many of his claims, pointing out Martin failed to make a timely *Batson* objection, and arguing many of Martin's claims were conclusory in nature.

On May 11, 2020, Martin filed a reply brief (ECF no. 46) in which he argued the state trial court lacked jurisdiction over his person, in part because his is not a "true living man," the state habeas court's denial of his *Batson* claim was "plain error," and he is actually innocent of Pendleton's murder because Marquis Wilkins did it and testified falsely at trial.

## II. STANDARD OF REVIEW

Because Martin filed this federal habeas corpus action after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), this Court's review of his claims for federal habeas corpus relief is governed by AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA standard of review, this Court cannot grant Amero federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685,

694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520-21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the

state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").  "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101(2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles.  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  Section 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Wood v. Allen*, 558 U.S. 290, 301(2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").  Even if reasonable minds reviewing the record might

disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).  It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2).  *See Wood*, 558 U.S. at 300-01 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

The deference to which state-court factual findings are entitled under AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").

Absent a showing that there is an absence of available state corrective process or that

circumstances exist that render such process ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (the exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation); 28 U.S.C. § 2254(b)(1).  Nonetheless, this Court is authorized to deny federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (a federal habeas court abuses its discretion if it grants a petitioner a stay when his unexhausted claims are plainly meritless); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  In those instances in which the state courts failed to adjudicate a claim on the merits that a petitioner presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or other Texas rules of procedural default or (2) which a petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated claim is de novo.  *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (de novo review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005) (de novo review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

### III.  RULE 2(c), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURT & THE NEED FOR FACTUAL SPECIFICITY IN FEDERAL HABEAS PLEADINGS

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that a petitioner must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  *Harper v. Lumpkin*, ___ F.4th ___, ___, 2021 WL 5630293, *2 (5th Cir. Dec. 1, 2021) (quoting *Mayle v. Felix*, 545 U.S. 644, 655 (2005), in turn quoting Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.  *Harper v. Lumpkin*, ___ F.4th at ___, 2021 WL 5630293, *2; *Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010); *Miller v. Johnson*, 200 F.3d 1008, 1012 (5th Cir. 2000).  To prevail on an ineffective assistance claim based on an uncalled witness, a petitioner must: (1) name the witness; (2) demonstrate that the witness would have testified; (3) set out the content of the witness's proposed testimony; and (4) show that the testimony would have been favorable.  *King v. Davis*, 883 F.3d 577, 590 (5th Cir. 2018); *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016); *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).  An applicant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *Trevino*, 829 F.3d at 338; *Gregory*, 601 F.3d at 352.  Thus, claims of ineffective assistance in a federal habeas petition must be accompanied by specific facts showing how the performance of counsel fell below an objective level of reasonableness and how the petitioner was thereby prejudiced.

### IV. FREESTANDING ACTUAL INNOCENCE CLAIM

#### A.  The Claim

In his first claim in his amended petition, Martin argues that because the prosecution had a

suspect who had the victim's blood on his shoe and there was no DNA evidence linking Martin to the crime scene, and also because his trial counsel failed to contact an alibi witness, there is reason to believe Martin is actually innocent of the offense in question.

## B.  No State Court Disposition

Martin did not fairly present the state appellate court with an actual innocence claim, either on direct appeal or in his state habeas corpus proceeding.

## C.  De Novo Review

Because Martin failed to fairly present his actual innocence claim to the state court, that claim is subject to de novo review from this Court.  In those instances in which the state courts failed to adjudicate a claim on the merits that petitioner presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or other Texas rules of procedural default, or (2) which the petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated claim is de novo.  *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (de novo review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of the *Strickland* analysis); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005) (de novo review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

This claim requires little analysis.  In this Circuit, freestanding claims of actual innocence are not cognizable as independent bases for federal habeas relief.  *In re Will*, 970 F.3d 536, 540 n.4 (5th Cir. 2020); *In re Raby*, 925 F.3d 749, 755 (5th Cir. 2019); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009).  Thus, Martin's subjective and unconvincing arguments as to why he believes he is actually innocent do not furnish an arguable basis for federal habeas corpus relief in this case.

*See Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000)); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) ("actual innocence is not an independently cognizable federal habeas claim" (quoting *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006)).

### D.  Conclusion

Martin's unexhausted initial federal habeas claim that he is actually innocent of capital murder does not furnish even an arguable basis for federal habeas corpus relief.  The District Court should, therefore, deny federal habeas corpus relief on this claim.

### V.  *BATSON* CLAIM

### A.  The Claim

Martin argues in his sixth claim in his amended federal habeas corpus petition that because the prosecution struck every member of his jury venire who was black, the prosecution violated his equal protection rights under the holding in *Batson v. Kentucky*, 476 U.S. 79 (1986).

### B.  State Court Disposition

As explained above, Martin's state trial counsel did not raise a timely *Batson* objection when the prosecution struck three black members of Martin's jury venire.  Martin raised no *Batson* claim on direct appeal.  In his state habeas corpus application, however, Martin did argue in his sixth claim for relief that his rights under *Batson* were violated by the prosecution.

The state habeas trial court reviewed an affidavit from Martin's trial counsel stating that he did not raise a timely *Batson* objection because he did not believe a violation of the rule in

*Batson* had taken place.  The state habeas trial court also heard testimony from the lead prosecutor explaining why she chose to use peremptory strikes against three black members of Martin's jury venire.  To reiterate, prosecutor Mink testified: (1) one of the three individuals in question had been on the opposite side of a civil lawsuit from Mink's former spouse; (2) her former spouse had informed Mink that the venire member in question was difficult to work with during negotiations; (3) Mink feared the individual in question might recognize Mink's name and associate her with Mink's former spouse to the detriment of the prosecution's case against Martin; (4) Mink found a second black venire member expressed sufficient antipathy toward incarceration and vacillation about their ability to render a verdict in a criminal case such that they posed a risk to the prosecution's case against Martin; (5) Mink struck that potential juror and a third potential juror because they both failed to answer a question on their juror questionnaires; and (6) because the prosecution planned to present a  number of Black witnesses as part of their case against Martin, there was no reason for the prosecution to seek to exclude any potential juror based upon their race.

The state habeas trial court found the prosecutor's proffered race-neutral reasons for striking all three venire members were credible and concluded Martin's *Batson* claim to be without merit.  More specifically, the state habeas trial court found "the Court is satisfied based on the testimony taken on June 25, 2018, that race was not a factor in the exercise of the State's peremptory strikes."  [ECF no. 50-18, at 84 of 88].  The Texas Court of Criminal Appeals denied Martin's *Batson* claim on the merits during Martin's state habeas corpus proceeding.

## C.  Clearly Established Federal Law

In *Batson*, the United States Supreme Court extended the equal protection principle barring the purposeful exclusion of Blacks from criminal jury service to the prosecution's use of

peremptory challenges during petit jury selection. *Batson*, 476 U.S. at 89 ("the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."). *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race: first, the defendant must make out a *prima facie* case of discriminatory jury selection based on the totality of the relevant facts concerning a prosecutor's conduct during the defendant's own trial; second, once the defendant makes the *prima facie* showing, the burden shifts to the State to come forward with a race-neutral explanation for challenging jurors within the arguably targeted class; finally, the trial court must determine if the defendant established purposeful discrimination by the prosecution. *Davis v. Ayala*, 576 U.S. 257, 270 (2015); *Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016); *Snyder v. Louisiana*, 552 U. S. 472, 476-77 (2008); *Miller-El v. Dretke*, 545 U. S. 231, 239 (2005); *Batson v. Kentucky*, 476 U. S. at 94-98.

### D.   AEDPA Analysis

A trial judge's findings in connection with a *Batson* challenge turn primarily upon an evaluation of the prosecutor's credibility and are entitled to deference. *Davis*, 576 U.S. at 271 ("The opponent of the strike bears the burden of persuasion regarding racial motivation and a trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled to 'great deference.'"); *Felker v. Jackson*, 562 U.S. 594, 598 (2011) (holding the same); *Batson*, 476 U.S. at 98 n.21 (holding the same). Under the AEDPA, even more deference must be shown. *Davis*, 576 U.S. at 271.

Having independently examined prosecutor Mink's state habeas testimony, and the voir dire testimony and juror questionnaire answers given by each of these three venire members, this

Court finds that evidence fully supported the race-neutral reasons given by the prosecution for peremptorily striking each of them. The state habeas trial court found prosecutor Mink's proffered race-neutral reasons for striking each of the three black venire members in question to be credible. Martin has alleged no specific facts, much less furnished clear and convincing evidence, suggesting the state habeas trial court's credibility finding on this subject was erroneous. Thus, Martin has failed to establish that the prosecution engaged in purposeful, race-based, discrimination against black members of Martin's jury venire.

### E. Conclusions

The Texas Court of Criminal Appeals' rejection on the merits of Martin's *Batson* claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding. The District Court should, therefore, deny federal habeas corpus relief on this claim.

## VI.  LACK OF SUBJECT MATTER JURISDICTION

### A. The Claim

In his cryptic tenth claim in his amended federal habeas corpus petition (comprehensible only through reference to the corresponding claim in Martin's original petition and the equally cryptic arguments in Martin's reply brief), Martin argues that the state trial court lacked subject matter jurisdiction over him and the charge against him because (1) "The State of Texas is a corporation vs. a Corporate Fiction" and (2) "KENYA MARTIN which is in fact not a true natural living man." (ECF no. 1, at p. 16 of 19).

18

### B.   State Court Disposition

Martin included the same conclusory assertions as his tenth ground for relief in his state habeas corpus application.  The state habeas trial court made no findings of fact or conclusions of law in the record currently before this court addressing these cryptic assertions.  The Texas Court of Criminal Appeals denied relief on all of Martin's state habeas claims, however.

### C.   Clearly Established Federal Law

> "When the original States declared their independence, they claimed the powers inherent in sovereignty – in the words of the Declaration of Independence, the authority "to do all … Acts and Things which independent States may of right do."  The Constitution limited but did not abolish the sovereign powers of the States, which retained "a residuary and inviolable sovereignty."  Thus, both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of "dual sovereignty."

*Gamble v. United States*, 139 S. Ct. 1960, 1968 (2019) (citations omitted); *Murphy v. N.C.A.A.*, 138 S. Ct. 1461, 1475 (2018); *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991).

The United States is a federal republic, not a unitary state like the United Kingdom.  *Gamble*, 139 S. Ct. at 1968.  "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  *Gregory*, 501 U.S. at 457 (quoting the Tenth Amendment).  "The States thus retain substantial sovereign authority under our constitutional system."  *Id.*  "The States possess primary authority for defining and enforcing the criminal law."  *Engle v. Isaac*, 456 U.S. 107, 128 (1982).

### D.   AEDPA Analysis

Among the authority exercised by the sovereign State of Texas in our constitutional federal republic is the power to enact and enforce criminal statutes prohibiting acts such as that committed by Martin, i.e., the intentional killing of a human being while in the course of committing or attempting to commit a robbery.  *See Gamble*, 139 S. Ct. at 1964 ("Under this 'dual sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has

prosecuted him for the same conduct under a federal statute."). The State of Texas' constitutional authority to prosecute a defendant for violation of a state criminal statute is even stronger when, as in Martin's case, the Federal Government has chosen not to prosecute the same defendant for the same conduct.

Martin's conclusory assertions, bereft of any specific facts in support, that the State of Texas is a "corporate fiction" and that he is "in fact not a true living natural man" do not furnish a rational basis for attacking the sovereign authority of the State of Texas to adopt and enforce a criminal statute prohibiting the intentional murder of another human being. Martin has identified no legal authority establishing that he possesses a federal constitutional right to commit murder as defined by applicable state law but remain immune from prosecution for that criminal offense. Nor has this Court's independent research gleaned any legal authority for such a proposition.

### E.  Conclusions

The Texas Court of Criminal Appeals' rejection on the merits of Martin's challenge to the subject matter jurisdiction of the state court in which he was tried and convicted was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding. The District Court should, therefore, deny federal habeas corpus relief on this claim.

### VII.  PERJURED TESTIMONY CLAIMS

### A.  The Claims

In his eighth claim in his amended petition, Martin argues the prosecution used the perjured testimony of Marquis Wilkins and law enforcement officer Toby Hudson to secure his conviction.

In his ninth claim in his amended petition, Martin argues Hudson gave perjured testimony when he testified that the search of Andrea Brown's vehicle on May 1, 2015 which produced the murder weapon followed a "traffic stop" because, Martin asserts, no traffic citation was issued to Brown or anyone else following the search of the vehicle.

### B.  State Court Disposition

Martin presented the same conclusory allegations of perjured testimony by the same two witnesses in his eighth and ninth grounds for relief in his state habeas corpus application.  The state habeas trial court did not expressly address any of these claims in the findings of fact and conclusions of law furnished to this Court by Respondent.  The Texas Court of Criminal Appeals denied all of these claims on the merits when it denied Martin's state habeas corpus application.

### C.  Clearly Established Federal law

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264. 269-70 (1959).  To succeed in showing a due process violation from the use of allegedly perjured testimony, a defendant has the burden of establishing that (1) the witness in question actually gave false testimony, (2) the falsity was material in that there was a reasonable likelihood that it affected the judgment of the jury, and (3) the prosecution used the testimony in question *knowing* that it was false.  *Giglio*, 405 U.S. at 153-54.  Thus, the deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice and violates due process.  *See Giglio*, 405 U.S. 153 (citing *Mooney v. Hologan*, 294 U.S. 103 (1935)); *Napue*, 360 U.S. at 269 (applying *Mooney* to testimony that bore upon a witness's credibility).

### D. AEDPA Analysis

To succeed in this type of due process claim, a defendant must show that the testimony complained of was actually false, the state knew or should have known that it was actually false, and the false testimony was material. *In re Raby*, 925 F.3d 749, 756 (5th Cir. 2019); *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014) (a conviction obtained through false evidence known to be such by representatives of the State violates a defendant's constitutional rights); *Kinsel v. Cain*, 647 F.3d 265, 271 (5th Cir. 2011) ("The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction."); *Reed v. Quarterman*, 504 F.3d at 473 (same). False testimony is material if there is "any reasonable likelihood" that it could have affected the jury's verdict. *Raby*, 925 F.3d at 756; *Canales*, 765 F.3d at 573; *Goodwin v. Johnson*, 132 F.3d 162, 185 (5th Cir. 1997) (citing *Westley v. Johnson*, 83 F.3d 714 (5th Cir. 1996)).

#### 1. Wilkins' Testimony

Martin argues that he is actually innocent of the offense for which he was convicted because there was evidence showing that a shoe print found on the front door of the crime scene at 823 Kentucky matched the tread pattern on a pair of tennis shoes owned by Marquis Wilkins. Martin argues the foregoing evidence somehow establishes that Wilkins was the person who fatally shot Edward Pendleton. He therefore concludes that Wilkins' trial testimony was false. To reiterate, Wilkins testified at Martin's trial that: (1) his white Adidas tennis shoes were worn by several other people who resided at or spent time at Wilkins' and Andrea Brown's apartment; (2) Brown drove Stevon Polk, Damarrus "Morris" Ary, and Martin away from the apartment on the morning of May 1, 2015; (3) when Brown returned with the three men later that morning, Polk and Ary

appeared frightened or distressed; but (4) Martin described with an emotionless demeanor how he shot a man during a robbery.

Other than pointing to the shoe print evidence, which tended to link Wilkins' tennis shoe to the shoe print found on the front door at 823 Kentucky, Martin identifies no evidence showing there was anything factually erroneous about the testimony Wilkins gave at Martin's trial. The fundamental problem with this aspect of Martin's *Giglio/Napue* claim is that the shoe print evidence in question does not establish the factual inaccuracy of any of Wilkins' trial testimony. The fact that Wilkins' shoe was present at the crime scene on the morning of Pendleton's murder does not establish that Wilkins was physically present at the crime scene on the same date. There was no testimony or other evidence presented at trial (and there is no evidence currently before this court) showing that Wilkins was wearing the tennis shoes in question on the morning of Pendleton's murder. Under such circumstances. Martin has failed to allege any specific facts showing Wilkins gave factually inaccurate testimony at Martin's trial.

Moreover, Martin alleges no facts, and presents no evidence, showing that the prosecution was ever aware or should have been aware that any portion of Wilkins' trial testimony was factually inaccurate. Thus, Martin has failed to allege specific facts showing the prosecution knowingly used false or misleading evidence to secure Martin's conviction.

Finally, absent some evidence showing that Wilkins was the person who fatally shot Pendleton, Martin's conclusory, self-serving, assertion that Wilkins committed the crime does not satisfy the materiality prong of *Giglio/Napue* analysis.

### 2. Hudson's Testimony

The same holds for Martin's equally conclusory assertion that Toby Hudson testified falsely that the stop of Andrea Brown's vehicle on May 1, 2015 (a search of which led to the discovery

of the murder weapon beneath the passenger seat in which Martin was riding) was a "traffic stop." Martin alleges no specific facts showing there was anything legally invalid about the stop of Brown's vehicle or the search of that vehicle which followed.

Moreover, Martin alleges no facts showing that he had any legal standing to challenge the legitimacy of the stop of Brown's vehicle or the search of same. Instead, Martin merely argues that no traffic citation was issued in connection with the stop of Brown's vehicle. The problem with Martin's observation is that Hudson never testified that a citation was issued in connection with the stop of Brown's vehicle. Thus, whether the stop of Brown's vehicle was a traffic stop or made pursuant to some other procedure (such as for the purpose of executing a search or arrest warrant) is irrelevant to any issue in Martin's case. Martin identifies no legal authority, and this Court's independent research has discovered none, mandating that a traffic stop always result in the issuance of a traffic citation.

Furthermore, as was true for Martin's complaints about Wilkins' testimony, Martin alleges no facts showing the prosecution was aware of, or should have been aware of, anything factually inaccurate about Hudson's trial testimony.

Absent some specific factual allegation (and some evidence) showing there was a legal basis for a challenge to the legitimacy of the stop of Brown's vehicle on May 1, 2015 (or the validity of the ensuing search), the alleged error in Hudson's testimony was simply not material to the outcome of Martin's capital murder trial.

### E. Conclusions

Martin's conclusory complaints of allegedly erroneous testimony by Wilkins and Hudson are bereft of specific facts showing that either witness gave any material testimony at Martin's trial that was factually inaccurate or that the prosecution knew or should have known of the falsity in

question.  Under such circumstances, the Texas Court of Criminal Appeals' rejections on the merits of Martin's *Giglio/Napue* claims were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding.  The District Court should, therefore, deny federal habeas corpus relief on these claims.

## VIII.  *BRADY* CLAIMS

### A.  The Claims

In his eighth claim in his amended petition, Martin argues the prosecution withheld exculpatory evidence from the defense in violation of the principle announced in *Brady v. Maryland*, 373 U.S. 83, 97 (1963), including a forensic report showing that Martin's clothing (presumably the clothing he was wearing at the time of his arrest) did not contain any gunshot residue.  Martin also argues the report would have shown there was gunshot residue on other, unidentified, suspects.

### B.  State Court Disposition

Martin included the same *Brady* claims in his eighth ground for relief in his state habeas corpus application.  The Order containing the state habeas trial court's findings of fact and conclusions of law does not include any reference to Martin's *Brady* claims.  The Texas Court of Criminal Appeals denied these claims on the merits, however, when it denied Martin's state habeas corpus application.

### C.  Clearly Established Federal Law

"'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting

*Brady*, 373 U.S. at 87).  The Supreme Court has consistently held the prosecution's duty to disclose evidence material to either guilt or punishment applies even when there has been no request by the accused. *Banks*, 540 U.S. at 690; *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *United States v. Agurs*, 427 U.S. 97, 107 (1976).  This duty also applies to impeachment evidence. *Strickler*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 676 & 685, (1985).  The rule in *Brady* encompasses evidence known only to police investigators and not personally known by the prosecutor.  *Strickler*, 527 U.S. at 280-81; *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).  "'[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Strickler*, 527 U.S. at 281 (quoting *Kyles*, 514 U.S. at 437).

Under clearly established Supreme Court precedent, there are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," i.e., prejudice must have ensued from its non-disclosure. *Banks*, 540 U.S. at 691; *Strickler*, 527 U.S. at 281-82.  Evidence is "material" under *Brady* where there exists a "reasonable probability" that had the evidence been disclosed the result at trial would have been different.  *Smith v. Cain*, 565 U.S. 73, 75 (2012); *Cone v. Bell*, 556 U.S. 449, 469-70 (2009); *Banks*, 540 U.S. at 698-99.  A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.  *Smith*, 565 U.S. at 75; *Kyles*, 514 U.S. at 434.

The Supreme Court has emphasized four aspects of the *Brady* materiality inquiry.  First, a showing of materiality does *not* require demonstration by a preponderance that disclosure of the

suppressed evidence would have resulted in the defendant's acquittal. *See Bagley*, 473 U.S. at 682 (expressly adopting the "prejudice" prong of the *Strickland* analysis of ineffective assistance claims as the appropriate standard for determining "materiality" under *Brady*). Second, the materiality standard is *not* a sufficiency of the evidence test. *Kyles*, 514 U.S. at 434-35. Third, once materiality is established, harmless error analysis has no application. *Id.* at 435-36. Finally, materiality must be assessed collectively, not item by item. *Id.* at 436-37.

### D.  AEDPA Analysis

Martin did not furnish the state habeas court with a copy of the forensic report he alleged existed at the time of his trial and which he claimed showed that the clothing he wore at the time of his arrest lacked any gunshot residue. Martin has also failed to furnish this Court with a copy of the forensic report in question. Martin has not identified the forensic report in question with any reasonable degree of specificity in his federal pleadings. Nor has Martin explained why, if in fact his clothing at the time of his arrest were bereft of gunshot residue, he was unaware of this fact or failed to inform his defense counsel of same.

Martin also fails to allege any specific facts showing who the other suspects were who allegedly had gunshot residue on their clothing and how that fact, if proven at trial, would have proven exculpatory to Martin. Prosecution witness Danielle Luce testified without contradiction at trial that she saw two men inside her residence and one of those men shot Pendleton at least once after she had heard two other shots fired. But she admitted she did not see who fired the first two shots. At least one of the bullets recovered from the crime scene lacked sufficient characteristics to allow it to be matched to a particular weapon. A shell casing was also found outside the Luce/Pendleton residence on the porch. Thus, it is completely possible that more than one person fired a shot while inside or before entering the Luce/Pendleton residence. There is no

evidence before this Court establishing that one, and only one, person fired a weapon on the morning of May 1, 2015 during the break-in at the Luce/Pendleton residence. Therefore, the presence or absence of gunshot residue on other suspects is not "material" to the capital murder charge against Martin within the meaning of *Brady*.

When information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the court is his lack of reasonable diligence, the defendant has no *Brady* claim. *United States v. Garcia*, 887 F.3d 205, 214 (5th Cir. 2018); *Pippin v. Dretke*, 434 F.3d 782, 790 (5th Cir. 2005); *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980). By definition, the prosecution cannot "withhold" evidence that is within the defendant's personal knowledge or within the knowledge of defense counsel at the time of trial. *See In re Swearingen*, 935 F.3d 415, 421 (5th Cir. 2019) (*Brady* claim failed where defense counsel was aware at the time of trial of the conclusions of an expert whose report was allegedly withheld); *Garcia*, 887 F.3d at 214 (*Brady* claim failed where defendant had personal knowledge of the date and content of his conversations with government officials).

More importantly, Martin has failed to allege any specific facts (or to present any evidence) showing that the clothing he was wearing at the time of his arrest (or any other clothing relevant to the case against him) that was allegedly bereft of gunshot residue was the same clothing he was wearing at the time Edward Pendleton was fatally shot. The testimony at Martin's capital trial established beyond any doubt that Pendleton was murdered on the morning of May 1, 2015, yet Martin was not arrested until several hours later the same date. Contrary to the suggestion underlying Martin's *Brady* claim, Martin has failed to allege any facts or to present any evidence showing that the clothing he was wearing at the time he was arrested was the same clothing he was wearing at the time of Edward Pendleton's fatal shooting. Thus, any evidence showing that

28

Martin's clothing at the time of his arrest was bereft of gunshot residue would not have been material to the outcome of Martin's capital murder trial within the meaning of *Brady*. Martin's *Brady* claim fails to satisfy any of the prongs of *Brady* analysis.

## E. Conclusions

Martin's conclusory *Brady* claim fails to satisfy any of the requirements for a legitimate *Brady* claim. Under such circumstances, the Texas Court of Criminal Appeals' rejection on the merits of Martin's *Brady* claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding. The District Court should, therefore, deny federal habeas corpus relief on this claim.

## IX. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

### A. Overview of the Claims

In his second through fifth claims in his amended federal habeas corpus petition, Martin argues that his trial counsel rendered ineffective assistance by failing to: (1) meet with Martin prior to trial at the jail; (2) hire a forensic expert and investigator to investigate (a) the prosecution's witnesses, (b) the crime scene evidence, (c) other suspects, and (d) gunshot residue; (3) obtain an affidavit from alibi witness Fabian McGee (and, in fact, encouraging McGee not to testify); (4) request an accomplice witness jury instruction or object to the absence of such an instruction from the jury charge regarding prosecution witness Marquis Wilkins; (5) object to juror Zuniga based upon her employment by the District Attorney's office; (6) question Zuniga regarding her possible bias; (7) subpoena Fabian McGee; (8) object to admission of recordings of telephone conversations between Martin and others while he was in jail awaiting trial; and (9) request a mistrial following

the state trial court's sustaining of a defense objection to improper prosecutorial jury argument. [ECF no. 26, at pp 6-8 of 12].

## B.  State Court Disposition

Martin included an even more expanded list of ineffective assistance complaints against his state trial counsel in his first through fifth claims in his state habeas corpus application, including all of the claims he presents to this Court in his amended federal habeas corpus petition. As explained above in Section I.D. fn. 9, the state habeas trial court (1) had before it a pair of affidavits from Martin's state trial counsel and state appellate counsel responding to Martin's ineffective assistance claims, and (2) made extensive findings of fact and conclusions of law regarding Martin's ineffective assistance claims in connection with its recommendation that the state appellate court deny those claims.  [The state habeas trial court's findings and conclusions are found at ECF no. 41, at pp. 58-66 of 106 and ECF no. 50-18, at pp. 79-86 of 88.]

Attorney Steven Denny (Martin's trial counsel) explained in his June 25, 2018 affidavit that: (1) he consulted with Martin on multiple occasions prior to trial; (2) he reviewed all of the prosecution's evidence prior to trial; (3) he inspected all of the prosecution's evidence and visited the crime scene prior to trial; (4) he investigated all of the prosecution witnesses and found impeaching evidence regarding the backgrounds of two of those witnesses, but his attempts to impeach those witnesses based on that evidence were foreclosed by the trial court sustaining a prosecution objection; (5) he prepared a subpoena for Fabian McGee but, after speaking with McGee, determined that McGee would not furnish testimony favorable to the defense; (6) he did not object to the traffic stop because Martin lacked standing to challenge the stop; (7) he did ask for a mistrial after the disqualification of a juror, but later agreed to have an alternate juror substitute in for the disqualified juror; (8) he did not request a mistrial after the trial court sustained

his objection to improper prosecutorial jury argument because the trial court ordered the jury to disregard the prosecutor's improper comment; (9) he did not object to the accomplice witness jury instruction because he did not believe it to be erroneous; and (10) he vigorously cross-examined prosecution witnesses and attempted to show they were not testifying truthfully. [ECF no. 41, at pp. 75-78 of 106].

The state habeas trial court concluded that, in view of attorney Denny's affidavit and the other evidence before the court, Martin's complaints against attorney Denny (1) did not establish that Denny's performance fell below an objective level of reasonableness, and (2) did not satisfy the prejudice prong of *Strickland*. [ECF no. 41, at pp. 64-66 of 106]. The state habeas trial court recommended denial of Martin's state habeas application, including all of Martin's complaints of ineffective assistance by his trial counsel. The Texas Court of Criminal Appeals denied all of Martin's complaints of ineffective assistance by Martin's trial counsel on the merits when it denied Martin's state habeas corpus application. Thus, AEDPA deference applies to the state habeas court's rejection on the merits of each of Martin's complaints of ineffective assistance by his trial counsel.

### C. Clearly Established Federal Law

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

In instances where the state courts failed to adjudicate either prong of the *Strickland* test (such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which the petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated prong is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005).

Under the AEDPA's deferential standard of review, claims of ineffective assistance

adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review. The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Wheeler,* 577 U.S. 73, 77 (2015) (quoting *White v. Woodall,* 572 U.S. 415, 419-20 (2014)); *Harrington v. Richter,* 562 U. S. 86, 103 (2011).

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."

*Harrington*, 562 U. S. at 101 (citations omitted).

### D. AEDPA Analysis

### 1. Failure to Consult Adequately Prior to Trial

As explained above in Section I.D. fn. 9, Martin alleged in his state habeas corpus application that his trial counsel failed to meet adequately with Martin at the jail prior to trial. The

state habeas trial court reviewed attorney Denny's affidavit (in which he asserted that he met with Martin multiple times prior to trial) and found that attorney Denny met adequately with Martin prior to trial to discuss the case against Martin.  Martin did not allege any facts or present any evidence to the state habeas court showing (1) he was unable to communicate any relevant information to his trial counsel prior to trial, or (2) additional pretrial consultations between himself and his trial counsel would have produced any identifiable new evidence or defensive theories.  Martin also fails to allege any specific facts in his federal pleadings establishing that it was reasonably necessary for his trial counsel to meet with Martin *at the jail*, as opposed to other locations, in order to adequately consult with Martin.  In the course of his state habeas corpus proceeding, Martin furnished an affidavit in which he admitted that he and his trial counsel conversed on the telephone at least three times prior to trial. [ECF no. 50-13, at pp. 25-27 of 88].[12] Martin has thus failed to present this Court with any specific facts, much less clear and convincing evidence, showing the state habeas trial court's factual finding that Denny met adequately with Martin prior to trial was erroneous.

As he did in state court, Martin offers this Court no specific facts, much less any evidence, showing that, had his trial counsel consulted more often or more extensively with Martin prior to trial, new or additional favorable evidence or defensive theories could have been developed. Brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel.  *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1982); *Jones v. Wainwright*, 604 F.2d 414, 416

---

[12] In the same affidavit, Martin alleged that he would have accepted a plea bargain if he had known prior to trial that McGee would not testify.  However, at no point in his affidavit or in his pleadings in state court or in this Court does Martin allege any specific facts or furnish any evidence showing the prosecution ever offered Martin a plea bargain to a lesser offense.

(5th Cir. 1979).  Under the record currently before this Court, Martin's conclusory assertion that attorney Denny failed to adequately consult with Martin prior to trial fails to satisfy either prong of *Strickland*.  Martin's first assertion of ineffective assistance listed above in Section IX.A. does not furnish a basis for federal habeas relief.

### 2.    Complaints Regarding Fabian McGee

As explained above in Section III, it is well settled in this Circuit that ineffective assistance claims premised upon trial counsel's failure to call a witness (i.e., "uncalled witness" claims) satisfy the prejudice prong of *Strickland* only when the petitioner (1) names the witness, (2) demonstrates that the witness was available to testify and would have testified, (3) sets out the content of the witness's proposed testimony, and (4) shows the testimony would have been favorable to a particular defense.  *See., e.g., Nelson v. Davis*, 952 F.3d 651, 669 (5th Cir. 2020); *King v. Davis*, 883 F.3d 577, 590 (5th Cir. 2018); *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016); *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014); *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Martin did not allege any specific facts or present any evidence to the state habeas court establishing that McGee was available to testify at Martin's trial, was willing to do so, or would have furnished an affidavit to Martin's counsel containing any helpful information if requested to do so.

Attorney Denny furnished the state habeas court with an affidavit in which he stated that he interviewed McGee and that, contrary to Martin's assertion, McGee was unable to furnish any testimony helpful to Martin, much less an alibi.  Martin alleged in his state habeas application, just as he alleges in this Court, that Fabian McGee could have offered alibi testimony establishing that

Martin was at McGee's residence at the time of Pendleton's murder.  However, Martin presented the state habeas court (and presents this Court) with no testimony, affidavit, or sworn statement from McGee confirming that McGee was available to testify at the time of Martin's trial and could have furnished an alibi to Martin.  It was incumbent upon Martin to develop the factual bases for his claims in the state court.  *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court).  Under such circumstances, Martin's complaints about his trial counsel's alleged failure to interview, subpoena, obtain an affidavit from, and call McGee to testify at trial all fail to satisfy the prejudice prong of *Strickland.*  Martin failed to present any evidence to the state habeas court showing that McGee could have furnished favorable testimony, alibi or otherwise, at the time of Martin's trial.  Likewise, Martin's conclusory assertion that his trial counsel urged McGee not to testify at Martin's trial is bereft of any evidentiary support in the state court record.  Martin's third and seventh assertions of ineffective assistance listed above in Section IX.A. do not furnish a basis for federal habeas relief.

### 3.   Failure to Investigate

As explained above in Section III, a federal habeas petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *Trevino*, 829 F.3d at 338; *Gregory*, 601 F.3d at 352.  Martin argues in conclusory fashion that his trial counsel should have hired a forensic expert and investigator to investigate the prosecution's witnesses, the crime scene evidence, other suspects, and gunshot residue.  Yet neither during his state habeas corpus proceeding nor in this Court has Martin alleged any specific facts, much less furnished any evidence, showing what favorable evidence would have been produced had his trial counsel

retained expert and investigative assistance to pursue these lines of investigation.

Attorney Denny's affidavit states that he reviewed all of the prosecution's evidence. Martin does not allege any specific facts showing how further investigation into the crime scene or other suspects would have produced any then-available evidence favorable to the defense.

Attorney Denny's affidavit established that he investigated the prosecution witnesses and discovered information that two of those witnesses had been involved in soliciting prostitution services. Denny's affidavit explains that when he attempted to impeach those witnesses at trial with that evidence, the prosecution successfully objected. This Court's review of the record from Martin's trial confirms the factual accuracy of Denny's account. S.F. Trial, Vol. 3/6, at 205-15 [ECF no. 50-27, at pp. 205-15 of 288]. Martin does not allege any facts, much less furnish any evidence, showing that further investigation into the backgrounds of any prosecution witness would have produced any admissible impeachment evidence or a legal basis for excluding those witness's testimony.

Insofar as Martin alleges that there was evidence available at the time of trial showing that his clothing lacked gunshot residue or that the clothing of other, unidentified, suspects did contain gunshot residue, for the same reasons discussed above in Section VIII.D., any such evidence necessarily fails to satisfy the prejudice prong of *Strickland*.

Under the record currently before this Court, Martin's conclusory assertion that attorney Denny failed to adequately investigate the case against Martin fails to satisfy either prong of *Strickland*. Martin's second assertion of ineffective assistance listed above in Section IX.A. does not furnish a basis for federal habeas relief.

### 4. Accomplice Witness Instruction as to Marquis Wilkins

Martin argues that his trial counsel should have requested a jury instruction on accomplice

witnesses regarding prosecution witness Marquis Wilkins or objected to the absence of such an instruction. The fundamental problem with this argument is, as explained above in Section I.C. fn. 8, on direct appeal the Amarillo Court of Appeals concluded that Wilkins was not an accomplice witness, as defined by applicable Texas law. *Martin*, 2017 WL 1090613, at *4. The Texas appellate court's conclusion on this matter of state law is binding on this federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013) (holding a Texas habeas court's interpretation of evidentiary rules was binding in a federal habeas case); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (a state court's interpretation of state law binds a federal court sitting in habeas corpus).

Attorney Denny cannot reasonably be faulted for failing to make a meritless objection or to request a jury instruction to which Martin was not entitled under applicable Texas law. Failure to make a meritless motion or objection cannot be grounds for a finding of deficient performance. *Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir. 2012); *Paredes*, 574 F.3d at 291. Likewise, Martin was not prejudiced within the meaning of *Strickland* by his trial counsel's failure to raise a meritless, baseless request for an accomplice witness instruction vis-à-vis Wilkins. *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013); *Paredes*, 574 F.3d at 291.

Martin's conclusory assertion that attorney Denny should have requested an accomplice witness instruction vis-à-vis prosecution witness Wilkins fails to satisfy either prong of *Strickland*. Martin's fourth assertion of ineffective assistance listed above in Section IX.A. does not furnish a basis for federal habeas relief.

38

### 5.    Complaints as to Juror Zuniga

Martin argues his trial counsel should have inquired during voir dire regarding juror Zuniga's potential bias.  Martin also alleges in conclusory fashion that Zuniga was employed by the District Attorney's office.  Contrary to Martin's naked assertions, however, this Court's independent examination of juror Zuniga's juror questionnaire reveals that she listed a health care provider as her employer, not the District Attorney's office.  Nor is there anything in the record from voir dire or in juror Zuniga's juror questionnaire that would have reasonably put attorney Denny on notice of a need to inquire into whether Zuniga was biased in Martin's case.  In sum, Martin failed to furnish the state habeas court with any specific facts or evidence showing there was any relationship between juror Zuniga and the District Attorney's office suggesting potential bias on the part of juror Zuniga.

Under the record currently before this Court, Martin's conclusory assertions regarding juror Zuniga fail to satisfy either prong of *Strickland*.  Martin's fifth and sixth assertions of ineffective assistance listed above in Section IX.A. do not furnish a basis for federal habeas relief.

### 6.    Failure to Object to Admission of Recordings of Jail Telephone Conversations

Martin argues that attorney Denny should have objected to the admission of recorded telephone conversations made while Martin was detained in the jail awaiting trial.  The state habeas trial court found that Denny did object to the admission of all the recorded telephone conversations in question and managed to obtain a ruling favorable to the defense with regard to one such recording. The record before the state habeas trial court supported the factual finding in question.  Attorney Denny stated in his affidavit before the state habeas court that he did object to the admission of the recordings in question and obtained a ruling favorable to the defense with regard to one such recording.  Martin has failed to allege any specific facts or present this Court with any evidence

(much less clear and convincing evidence) showing the state habeas trial court's factual finding on this point was erroneous.  Under such circumstances, the state habeas court reasonably concluded this ineffective assistance complaint failed to satisfy the deficient performance prong of *Strickland.*

Moreover, Martin fails to allege any facts or present any evidence identifying a legitimate legal basis for an objection to admission of the recorded telephone conversations that were played in open court for the jury.  Thus, Martin's conclusory complaint also fails to satisfy the prejudice prong of *Strickland.*

Under the record currently before this Court, Martin's conclusory assertions regarding his trial counsel's alleged failure to object to admission of the recorded telephone conversations in question fail to satisfy either prong of *Strickland*.  Martin's eighth assertion of ineffective assistance listed above in Section IX.A. does not furnish a basis for federal habeas relief.

### 7.    Failure to Request a Mistrial

Martin also complains that his trial counsel failed to request a mistrial after obtaining a favorable ruling on an objection to improper prosecutorial jury argument.  This Court's independent review of the record from Martin's trial reveals that, during closing jury argument, the prosecutor did accuse Martin's defense counsel of "fabricating inconsistencies" in the trial testimony of prosecution witness Korntee Fennell.  Attorney Denny objected to the argument as a personal attack upon him.  The state trial court sustained Denny's objection and instructed the jury to disregard the prosecutor's comment.  S.F. Trial, Vol. 5/6, at 62-63 [ECF no. 50-29, at pp. 62-63 of 92].

Attorney Denny stated in his affidavit submitted to the state habeas court that he did not request a mistrial after the trial court sustained his objection because the trial court instructed the jury to disregard the prosecutor's improper comment.  The state habeas trial court concluded attorney

Denny's performance, including his failure to request a mistrial, did not fall below an objective level of reasonableness. This conclusion was itself eminently reasonable. The state trial court instructed the jury to disregard the prosecutor's personal attack on attorney Denny.

Furthermore, this Court independently concludes there is no reasonable probability that, but for the failure of attorney Denny to request a mistrial, the outcome of Martin's trial would have been any different. The improper prosecutorial jury argument in question attacked attorney Denny, not Martin. Attorney Denny raised a timely objection, which was sustained. The trial court promptly instructed the jury to disregard the prosecutor's improper argument. Juries are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).

Under the record currently before this Court, Martin's conclusory assertions regarding his trial counsel's failure to request a mistrial fails to satisfy either prong of *Strickland*. Martin's ninth assertion of ineffective assistance listed above in Section IX.A. does not furnish a basis for federal habeas relief.

### E. Conclusions

Martin's conclusory claims of ineffective assistance by his trial counsel all fail to satisfy either prong of *Strickland*. Under such circumstances, the Texas Court of Criminal Appeals' rejections on the merits of Martin's claims of ineffective assistance by his trial counsel were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding. The District Court should, therefore, deny federal habeas corpus relief on Martin's second through fifth claims for relief.

## X.  INEFFECTIVE ASSISTANCE OF APPPELLATE COUNSEL CLAIMS

### A.  The Claims

In his seventh ground for federal habeas corpus relief in his amended petition, Martin argues that his state appellate counsel rendered ineffective assistance by (1) failing to raise a point of error complaining about the presence of juror Hobbs after it became apparent that she worked with a relative of the victim, and (2) waiving two points of error during oral argument.

### B.  State Court Disposition

After the commencement of Martin's trial, it became known to one of the jurors (named Hobbs) that one of her co-workers was a relative of the victim in Martin's case.  The juror communicated this fact to the trial judge.  The trial court communicated this information to the parties outside the presence of the jury.  The juror in question was discharged.  An alternate juror replaced the juror in question.  Martin's defense counsel objected.  The trial court then conducted a hearing in which all of the remaining jurors were questioned regarding their knowledge of the situation.  All jurors denied any personal knowledge of juror Hobbs' relationship to a relative of the victim.  The trial court denied attorney Denny's objection and motion for mistrial based on jury misconduct.  S.F. Trial, Vol. 4/6, at 229-48 [ECF no. 50-28, at pp. 229-48 of 251].  The following day, before the charge conference, attorney Denny and Martin himself on the record withdrew the defense's objection to the discharge of juror Hobbs and the substitution of an alternate juror.  S.F. Trial, Vol. 5/6, at 6-7 [ECF no. 50-29, at pp. 6-7 of 92].  All of the foregoing took place prior to the start of deliberations by Martin's jury.

Martin raised similar complaints of ineffective assistance by his state appellate counsel in his seventh ground for relief in his state habeas corpus application.  The state habeas trial court had before it an affidavit from Martin's state appellate counsel, attorney John Bennett.  Attorney

Bennett stated in his affidavit that (1) he had no memory of the matter relating to juror Hobbs, and (2) at oral argument, he waived two of the four accomplice-witness points of error he raised in Martin's appellant's brief because he had discovered mandatory precedent rejecting those legal arguments. [ECF no. 41, at p. 74 of 106].  The state habeas trial court found that (1) Martin expressly agreed on the record to the actions taken by the state trial court vis-à-vis juror Hobbs, and (2) attorney Bennett's actions in waiving two points of error were objectively reasonable given Bennett's discovery of governing caselaw rejecting those legal arguments. [ECF no. 50-18, at pp. 84-86 of 88].  The state habeas trial court concluded that attorney Bennett's performance did not fall below an objective level of reasonableness. [ECF no. 41, at p. 66 of 106].

### C.  Clearly Established Federal Law

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal. *See Smith v. Robbins*, 528 U. S. 259, 285 (2000) (holding a petitioner arguing ineffective assistance by his appellate counsel must establish both his appellate counsel's performance was objectively unreasonable and there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal).  Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into whether appellate counsel's performance was deficient, i.e., whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and whether appellate counsel's allegedly deficient performance "prejudiced" the petitioner, i.e., whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of the petitioner's appeal would have been different. *Smith v. Robbins*, 528 U. S. at 285.  Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim but, rather, may select from among them in order to

maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U. S. at 288; *Jones v. Barnes*, 463 U. S. 745, 751 (1983). The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Smith v. Murray*, 477 U. S. 527, 536 (1986); *Jones v. Barnes*, 463 U. S. at 751-52.

Where, as in Martin's case, appellate counsel presented, briefed, and argued, albeit unsuccessfully, one or more nonfrivolous grounds for relief on appeal and did not seek to withdraw from representation without filing an adequate *Anders* brief, the defendant must satisfy *both* prongs of the *Strickland* test in connection with his claims of ineffective assistance by his appellate counsel. *See Roe v. Flores-Ortega*, 528 U. S. 470, 477, 482 (2000) (holding the dual prongs of *Strickland* apply to complaints of ineffective appellate counsel and recognizing, in cases involving "attorney error," the defendant must show prejudice); *Smith v. Robbins*, 528 U.S. at 287-89 (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*).

### D.  AEDPA Review

### 1.  Objection to Juror Replacement

The state habeas trial court found that Martin and his trial counsel both withdrew their objections to the trial court's decision to dismiss juror Hobbs and substitute an alternate juror after Hobbs made the court aware that she had seen a co-worker attending the trial and learned (after the trial commenced) that her co-worker was related to Martin's victim. Martin has alleged no facts and presented no clear and convincing evidence showing that the state habeas trial court's factual finding on this point was erroneous. Thus, it is apparent from this Court's independent review of the trial record that both Martin and his trial counsel stated on the record that they had no objection to the trial court's dismissal of juror Hobbs or the substitution of an alternate juror

for Hobbs, all of which took place prior to the commencement of closing jury arguments and jury deliberations.

The state habeas court's conclusion that Martin's state appellate attorney Bennett's performance was not deficient was eminently reasonable. Bennett cannot reasonably be faulted for failing to assert a point of error addressing a state trial court ruling to which Martin and his trial counsel expressly waived objection. Nor does Martin identify any legal authority establishing that the state trial court's actions in dismissing juror Hobbs and substituting an alternate juror prior to the commencement of deliberations was in any way erroneous. There is no factual allegation, much less any evidence, currently before this Court suggesting that juror Hobbs (or anyone else for that matter) was aware prior to the commencement of Martin's trial that one of Hobbs' co-workers was related to the victim (Pendleton). When Hobbs became aware of that fact, she communicated same to the trial court, which conducted a survey of the entire jury that revealed no one else on the jury was aware of the relationship between Hobbs' coworker and the victim.

Under such circumstances, Martin has failed to allege any facts showing there was any misconduct by juror Hobbs or any other member of Martin's jury. Bennett could reasonably have concluded that a point of error seeking a reversal of Martin's conviction based upon the foregoing scenario was unlikely to prevail on appeal or was weaker than the accomplice-witness points of error attorney Bennett did assert on direct appeal. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (declining to raise a claim on appeal is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court); *Smith v. Robbins*, 528 U.S. at 288 (to prove ineffective assistance on appeal for failure to raise a claim in a merits brief, a petitioner must show that a particular omitted nonfrivolous issue was clearly stronger than issues that appellate counsel did present); *Medellin v. Dretke*, 371 F.43d 270, 279 (5th Cir. 2004) (failure

45

of appellate counsel to raise a meritless *Batson* claim on direct appeal was not ineffective assistance).  Martin's complaints about the trial court's rulings vis-à-vis juror Hobbs were not plainly stronger than the accomplice-witness points of error attorney Bennett did include in Martin's appellate brief.  Moreover, Martin fails to allege any facts showing that, but for the failure of his state appellate counsel to challenge the trial court's rulings vis-à-vis juror Hobbs, the outcome of Martin's direct appeal would have been any different.

### 2.    Waiver of Two Accomplice-Witness Points of Error

Martin complains that his appellate counsel Bennett waived two accomplice-witness points of error during oral argument.  Attorney Bennett explained in his uncontroverted affidavit before the state habeas court that he waived those two points of error after he discovered mandatory precedent establishing them to be without merit.  Martin alleges no facts and cites no legal authority establishing otherwise.  Under such circumstances, Bennett's decision to focus on two of the four accomplice-witness arguments, rather than persisting in presenting four points, at least half of which he knew to be without merit, was eminently reasonable, as the state habeas court reasonably determined.  The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Smith*, 477 U. S. at 536; *Jones*, 463 U. S. at 751-52.  Moreover, Bennett did persist in asserting two accomplice-witness points of error, both of which proved to be without merit.  Thus, Martin has wholly failed to establish that the outcome of his direct appeal would have been any different had attorney Bennett persisted in asserting all four of the accomplice-witness points contained in Martin's state appellate brief.

### E.  Conclusions

Martin's conclusory claims of ineffective assistance by his state appellate counsel all fail to

satisfy either prong of *Strickland*. Under such circumstances, the Texas Court of Criminal Appeals' rejections on the merits of Martin's claims of ineffective assistance by his state appellate counsel were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Martin's state habeas corpus proceeding. The District Court should, therefore, deny federal habeas corpus relief on Martin's seventh claim for relief.

## XI.  REQUEST FOR EVIDENTIARY HEARING

Martin requests an evidentiary hearing. With the exception of his unexhausted actual innocence claim, all of Martin's grounds for federal habeas corpus relief were disposed of on the merits during the course of his state habeas corpus proceeding. He is not entitled to a federal evidentiary hearing to develop new evidence attacking the state habeas court's resolution of his claims. Under AEDPA, the proper place for development of the facts supporting a federal habeas claim is the state court. *See Harrington*, 562 U. S. at 103 ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court). Where a petitioner's claims have been rejected on the merits, further factual development in federal court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, 563 U. S. 170, 181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This

> backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Thus, Martin is not entitled to a federal evidentiary hearing on any of his claims that were rejected on the merits by the state courts, either on direct appeal or during his state habeas corpus proceeding. *See Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (quoting *Cullen*, 563 U.S. at 185)), *cert. denied*, 140 S. Ct. 167 (2019). Martin is not entitled to a federal evidentiary hearing on any of his claims that were rejected on the merits by the state habeas court. *See Schriro v. Landrigan*, 550 U. S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). For the reasons discussed above in Section IV, his actual innocence claim is legally frivolous. Thus, Martin is not entitled to an evidentiary hearing on any of the claims contained in his amended federal habeas corpus petition.

## XII.  MOTION FOR ACCESS TO SEALED JUROR QUESTIONNAIRES

Martin has filed a motion requesting that he be given access to the sealed juror questionnaires filed by Respondent. [ECF no. 55]. Other than furnishing personal information about the home addresses and occupations of his jurors, however, the brief questionnaires filed by Respondent do not furnish any information relevant to any issue in this federal habeas corpus proceeding. Martin argues the questionnaires are probative on his *Batson* claim. He does not explain how or why he believes this to be the case. Nor does he explain how the questionnaires, which furnish only brief biographical information on the jury venire, are probative on the central issue relating to his *Batson* claim, i.e., whether the prosecution's proffered race-neutral reasons for

striking three particular members of the jury venire were credible.

As explained above in Section V, there is no genuine dispute that the three venire members in question were Black or that the prosecution used peremptory strikes against them. Unlike typical capital murder cases, the very brief juror questionnaire employed in Martin's trial did not ask potential jurors to furnish a wide variety of information about their views on capital punishment. The only information contained on the juror "questionnaires" filed by Respondent in response to this court's Order consisted of the name and address of the venire member, a checklist regarding their highest level of educational achieved, their place of employment, age, marital status, ethnicity, social security and telephone numbers, the name of their spouse, and the length of time they had been a resident of their current home. [*See* ECF no. 52].

For obvious reasons, Martin is not entitled to access to his jurors' personal contact information of such a nature under the guise of addressing his *Batson* claim. In fact, other than revealing the ethnicity of the members of Martin's jury venire, the questionnaires executed by Martin's potential jurors have very little utility in terms of assisting the court to resolve Martin's *Batson* claim. Because there is no genuine dispute that the prosecution used peremptory strikes against the only three Black members of Martin's jury venire, Martin does not need access to the questionnaire answers. The District Court should deny Martin's request for access to the juror questionnaires.

### XIII. CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See*

*Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted. *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order, such as this one, adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or

lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right, and (2) the district court's procedural ruling was correct). This Court did not dispose of any of Martin's federal habeas corpus claims on procedural grounds; this court addressed the merits of all of Martin's federal constitutional claims.

The deferential standard of review applied to claims of ineffective assistance adjudicated on the merits in the state courts has particular bite in evaluating the appealability of ineffective assistance claims—the Supreme Court requires that federal courts "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt,* 571 U.S. at 15.

Reasonable minds could not disagree with this Court's conclusions that: (1) all of Martin's complaints of ineffective assistance by his trial counsel fail to satisfy both prongs of *Strickland*; (2) all of Martin's complaints of ineffective assistance by his state appellate counsel fail to satisfy both prongs of *Strickland*; (3) the Texas Court of Criminal Appeals reasonably rejected on the merits Martin's claims premised upon alleged *Giglio/Napue* and *Brady* violations, alleged police and prosecutorial misconduct, and the alleged absence of subject matter jurisdiction in the state trial court; and (4) Martin is not entitled to an evidentiary hearing in this Court. Martin is not entitled to a Certificate of Appealability on any of his claims for relief.

## XIV.  RECOMMENDATION

For the foregoing reasons it is the recommendation of the undersigned Magistrate Judge that: (1) all relief requested in Martin's amended federal habeas corpus petition (ECF no. 26), as supplemented by his reply brief (ECF no. 46), be **DENIED**; (2) Martin's request for an evidentiary hearing be **DENIED**; (3) Martin's motion requesting access to his juror questionnaires (ECF no. 55) be **DENIED**; and (4) Martin be **DENIED** a Certificate of Appealability with regard to all of his claims for relief.

## XV.  INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 21, 2022.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).